IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| ADRIAN R. SCOTT, ) | |
| ) | |
| Plaintiff *pro se*, ) | Civil Action No. 23-cv-02228-LKG |
| ) | |
| v. ) | Dated: January 30, 2025 |
| ) | |
| WALMART INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

**I.  INTRODUCTION**

In this employment discrimination matter, the Plaintiff *pro se*, Adrian R. Scott, asserts federal and state law employment discrimination and retaliation claims, upon the bases of race, color, sex, age and disability, against the Defendants, Walmart Inc. and Wal-Mart Stores East LP (collectively, "Walmart"), and Doug McMillion, Delmid Villamor and Naila Reid-Armstrong (collectively, the "Individual Defendants"), pursuant to, among other laws, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"),  29 U.S.C. §§ 621-34, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  ECF No. 1.  The Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 21.  The motion is fully briefed.  ECF Nos. 21, 25 and 26.  No hearing is necessary to resolve the motion.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion to dismiss; and (2) **DISMISSES** the complaint.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this employment discrimination matter, the Plaintiff asserts federal and state law employment discrimination and retaliation claims, upon the bases of race, color, sex, age and disability, against the Defendants, pursuant to, among other laws, Title VII, the ADA, the ADEA, the FMLA and ERISA. ECF No. 1. Specifically, the Plaintiff asserts the following 18 claims in the complaint: (1) FMLA-Interference and Retaliation (Count I); (2) ADA-Failure to Accommodate and Retaliation (Count II); (3) Title VII-Employment Discrimination and Retaliation on the Basis of Age, Employment Discrimination and Retaliation on the Basis of Race (Count III); (4) ERISA-Interference (Count IV); (5) "Persons with Disabilities Civil Rights Act" (Count V); (6) FLSA Violation (Count VI); (7) Maryland Fair Employment Practices Act-Employment Discrimination and Retaliation on the Basis of Age and Race (Count VII); (8) Breach of Contract (Count VII); (9) ADEA-Age Discrimination (Count IX); (10) Rehabilitation Act (Count X); (11) Hostile Work Environment (Count XI); (12) Section 1981-Discrimination on the Basis of Race (Count XII); (13) Workman Compensation (Count XIII); (14) "State Government Section 20-601-608 Aiding Abetting and Attempting Discriminatory Act" (Count XIV); (15) Wrongful Termination (Count XV); (16) Wrongful Termination (Count XVI); (17) Fourteenth Amendment Equal Protection Violation (Count XVII); and (18) Fourteenth Amendment Due Process Violation (Count XVIII). *Id*. As relief, the Plaintiff seeks, among other things, compensatory damages, punitive damages, back pay, front pay, appointment to a position as Overnight Team Lead at Walmart, certain injunctive relief and to recovery attorney's fees and costs from the Defendants. *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff, Adrian Scott, is a 65-year-old Black man and a resident of Maryland. ECF No. 1, at Parties ¶ 5.

Defendant, Walmart, is a private corporation with its headquarters located in Bentonville,

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the Defendants' motion to dismiss and the memorandum in support thereof. ECF Nos. 1 and 21 and 21-1.

Arkansas. *Id*. at ¶ 6.

Defendant, Doug McMillion, is the Chief Executive Officer of Walmart Inc. *Id.* at ¶ 8. At all times relevant to this matter, Mr. McMillon was an indirect "supervisor/manager" of the Plaintiff. *Id*.

Defendant, Delmid Vilatoro, is a Market Coordinator/Human Resource Manager for Walmart Inc, and its affiliates. *Id.* at ¶ 9.

Defendant, Nailah Reid-Armstrong, is a Market Coordinator/Human Resource Manager for Walmart Inc., and its affiliates. *Id.* at ¶ 10.

The Plaintiff's Employment History

On March 12, 2021, the Plaintiff began working for Walmart as an "Overnight Team Lead," in Walmart's Hanover, Maryland location, Store #3940. *Id*. at Factual Background ¶¶ 2, 4 and 6. The Plaintiff alleges that, after he started working for Walmart, he was subjected to discrimination and retaliation based upon race, color, sex, age and disability. *See generally* ECF No. 1.

Specifically, the Plaintiff alleges that he has a disability and that he told Walmart's "agents/recruiters" about his "disability of Anxiety, Panic, Depression and Stress," and his caregiving responsibilities for his mother and other family members, during the recruitment process for his employment. *Id.* at ¶ 4, n.2. The Plaintiff also alleges that Walmart failed to properly classify him as an Overnight Team Lead in its employment database. *Id*. at ¶ 5, 7-8.

In this regard, the Plaintiff alleges that his compensation rate was misclassified. *Id.* at ¶ 5. The Plaintiff further alleges that, while he was assured by his manager and coach that the change to his job classification would be made no later than March 15, 2021, Walmart failed to make this change. *Id.* at ¶ 7.

In March 2021, the Plaintiff filed an internal complaint about the alleged misclassification of his job title through Walmart's "Open Door Policy." *Id*. at ¶ 9. But the Plaintiff alleges that the Store Manager and his workplace coach told him to "immediately withdraw his Open-Door Complaint at the risk of being transferred or terminated." *Id*. at ¶ 10. The Plaintiff also alleges that he was told that he would not be reclassified, by either job code or pay, until he dropped this complaint. *Id.* at ¶ 12.

The Plaintiff, nonetheless, refused to drop his complaint and he continued to work at Walmart. *Id.* at ¶¶ 12, 14 and 16. The Plaintiff contends that he performed better than other Team Leads, and that he also maintained an exemplary employment record. *Id.* at ¶ 23-24.[2]

But the Plaintiff continued to be dissatisfied with his work experience at Walmart. And so, he filed numerous "Open Door" complaints regarding his job classification during the period March 2021 to July 2021. *Id.* at ¶ 17. The Plaintiff alleges that, at this time, he experienced "discrimination, harassment, retaliation, targeting, bullying etc.," which "had a severe negative effect on [his] Mental and Physical Health" and interfered with his caretaking responsibilities, during this time. *Id.* at ¶ 17-18.

The Plaintiff also alleges that he engaged in other protected activity between July 2021 and September 2021 and that Walmart retaliated against him for engaging in this protected activity, by engaging in the following retaliatory conduct:

- threatening termination for engaging in protected activity
- manipulating the Plaintiff's schedule
- overriding the Plaintiff's electronic time entries
- falsifying the Plaintiff's electronic time entries
- denial of overtime pay
- withdrawing the Plaintiff's "Reasonable Accommodation" relating to his schedule, and
- denying the Plaintiff bereavement leave, and then granting the Plaintiff bereavement leave, but subjecting the Plaintiff to "scrutiny"

*Id.* at ¶ 28. In this regard, the Plaintiff alleges that he "had placed the Defendants and its agents on notice of his intent to engage in protected activity both internally and externally, to include filing formal complaints with EEOC [the Equal Employment Opportunity Commission] and Maryland Commission Civil Rights." *Id.* at ¶ 27.

Plaintiff's Periods Of Leave, EEO Activity And Termination

The Plaintiff also alleges that he was placed on involuntarily paid leave in 2021, in accordance with the "Defendants Mandatory COVID-19 Protected Paid Leave of Absence" policy. *Id.* at ¶¶ 21 and 30. But the Plaintiff alleges that he was "often forced … back to work

---

[2] Paragraph 24 of the Factual Background section of the complaint states the dates as "March 12, 2023, thru July 3, 2023," which appears to be an error given that the Plaintiff refers to events that occurred in 2021. ECF No. 1 at Factual Background ¶ 24.

under threats in a worsened Mental and Physical state," during this period of leave. *Id.* at ¶ 22. The Plaintiff alleges that he received a voicemail message from his workplace coach, Roland Ihama, terminating his employment on September 13, 2021. *Id.* at ¶¶ 30-31. And so, on September 30, 2021, the Plaintiff contacted the EEOC and attempted to file a complaint. *Id.* at ¶ 32.[3]

The Plaintiff alleges that Walmart reinstated him to his position on or about October 31, 2021. *Id.* at ¶ 33. But he alleges that, thereafter, he experienced a "Hostile Work Environment so intolerable with consistent debilitating effects which forced [him] to purchase and wear a 'Body Camera,'" when he returned to work. *Id.* at ¶ 35. In this regard, the Plaintiff alleges that more experienced and more senior team leads refused to train him, repeatedly "sabotaged [his] work efforts," and spied on him. *Id.* at ¶ 37. In addition, the Plaintiff alleges that he received a disciplinary writeup for stage fright and that his coworkers engaged in misconduct. *Id.*

The Plaintiff alleges he was again placed on paid leave in 2022. *Id.* at ¶ 38-39. During this period of leave, Walmart informed the Plaintiff that his job position would be assigned to someone else and that he would have approximately 30 days upon his return to work to find a new job or be terminated. *Id.* And so, Walmart terminated the Plaintiff's employment on or about November 26, 2022. *Id.* at ¶ 39.

**B.    Procedural History**

The Plaintiff commenced this action on August 15, 2023. ECF No. 1. On June 3, 2024, the Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 21 and 21-1.

On July 31, 2024, the Plaintiff filed a response in opposition to the Defendants' motion to dismiss. ECF No. 25. On August 21, 2024, the Defendants filed a reply brief. ECF No. 26.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

---

[3] The Plaintiff states in his complaint that he submitted a complaint with the EEOC on September 30, 2021. ECF No. 1 at Factual Background ¶ 20. But he provides evidence of a complaint which was filed with the EEOC on April 7, 2022. *See* ECF No. 1-1.

4

### III.    LEGAL STANDARDS

#### A. *Pro Se* Litigants

The Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also Bell v. Bank of Am., N.A.*, No. 13-0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations omitted). And so, if a plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

#### B. Fed. R. Civ. P. 8 And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that Rule 8(a) "requires a 'showing' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). Given this, a complaint must provide "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. And so, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" as required by Rule 8. *Vitol, S.A., v. Primerose Shipping Co*., 708 F.3d 527, 543 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253

5

(4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Inc,.* 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)); *see also Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121 (Md. 2007) (holding that a court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) when the claim lacks a cognizable legal theory).

### C. Title VII

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e.[4] Title VII requires that a plaintiff file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing suit in this Court. 42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

---

[4] The Plaintiff also alleges that Walmart violated the Maryland Fair Employment Practices Act ("MFEPA"). *See* Md. Code State Gov't § 20-606(a)(1)(i). The MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc*., No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). Under the MFEPA, "a complainant may bring a civil action . . . alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge . . .; (2) at least 180 days have elapsed since the filing . . .; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred." Md. Code State Gov't. § 20-1013(a). And so, the MFEPA requires that a plaintiff file an employment discrimination action within two years of an alleged unlawful employment practice, provided that plaintiff's administrative charge was timely under federal or local law. *See id*. When a plaintiff has not asserted a distinction between a federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the state and federal discrimination claims. *See Blakes v. City of Hyattsville,* 909 F. Supp. 2d 431, 444 (D. Md. 2012).

6

Title VII also requires that an aggrieved party file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred" or within 300 days "if the aggrieved person presented the claim to a state deferral agency." 42 U.S.C. § 2000e–5(e)(1). If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . or three hundred … days. . . then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

The United States Court of Appeals for the Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). The Supreme Court has also held that Title VII's charge-filing requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty, Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019). And so, the Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC. *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Mile*s, 429 F.3d at 491.[5]

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through

---

[5] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

7

circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. A plaintiff may establish a *prima facie* case of discrimination by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom.*, 566 U.S. 30 (2012). To constitute an adverse employment action, the action must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes*, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). An assignment or action which is merely "less appealing to the employee" does not meet the threshold for an adverse employment action. Lastly, to be similarly situated, the alleged comparators must be similar in all material respects, including reporting to the same supervisor, subject to the same standards, and engaged in the same conduct. *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally

discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Relevant to the pending motion to dismiss, the United States Supreme Court has established that when determining if "an actionable hostile work environment claim exists," courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). And so, the Fourth Circuit has held that to sustain a hostile work environment claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (same).

Lastly, and also relevant to the pending motion, the Fourth Circuit has held that only the employer can be held liable under Title VII, the ADA, and the ADEA. *See McNeal v. Montgomery County, Md.*, 307 Fed. App'x. 766, 775 n.6 (4th Cir. 2009) (argued but unpublished) ("[O]nly an employer, not an individual employee, may be held liable under the ADEA."); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir.1999) (finding that neither Title VII nor the ADA provides for actions against individual defendants for violation of its provisions). Whether the FMLA imposes liability on employee supervisors in their individual capacities is an open question in the Fourth Circuit. *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010).

**D. The FMLA**

The FMLA allows eligible employees to take "12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). Claims can be brought under the FMLA for either interference with an entitlement to FMLA leave, or retaliation for exercising the right to FMLA leave. *Id*. at §§ 2615(a), 2617(a). The Fourth Circuit has explained that "[t]he substantive rights guaranteed by the FMLA are prescriptive, and a plaintiff seeking redress for employer interference with an entitlement is only

9

required to show that he or she qualified for the right that was denied." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006)) (emphasis in original). And so, to prevail on a FMLA interference claim, an employee must show: "(1) that he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted).

A plaintiff claiming FMLA retaliation must make a *prima facie* showing that: (1) the plaintiff engaged in protected activity; (2) the employer took adverse action against the plaintiff; and (3) the adverse action was causally connected to the plaintiff's protected activity. *Yashenko*, 446 F.3d at 551. In this regard, "[a]n adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An FMLA retaliation claim is analyzed under the same burden shifting framework that applies to retaliation claims brought pursuant to Title VII. *Adams*, 789 F.3d at 429 (citations omitted). And so, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (internal citations omitted).

### E. The ADA

To state a claim for disability discrimination under the ADA, a plaintiff must plead facts showing that: (1) he has a disability, (2) he is a "qualified individual" for the employment in question, and (3) the employer took an adverse employment action against him because of his disability. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004).

A disability discrimination claim under the ADA may be proven through either direct and indirect evidence, or through the *McDonnell Douglas* burden-shifting framework. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 & n. 3 (2003). To prove a failure to accommodate claim

under the ADA, a plaintiff must plead sufficient facts to show that: (1) [he] had a disability within the statutory meaning; (2) the employer knew of [his] disability; (3) a reasonable accommodation would permit [him] to perform the essential functions of the position; and (4) the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021). Even when a plaintiff makes this showing, the employer can still defeat the failure to accommodate claim by demonstrating that the reasonable accommodations would impose an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002) (quoting § 12112(b)(5)(A)). To prove a retaliation claim under the ADA, a plaintiff must prove that: "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012).

### F. ERISA

Lastly, Section 510 of ERISA "guarantees that no employee will be terminated where the purpose of the discharge is the interference with one's pension rights." *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238 (4th Cir. 1991). To prevail on a claim under ERISA, a plaintiff "must prove a specific intent of the employer to interfere with an employee's pension rights." *Id.* at 239. When there is no direct evidence of intent to interfere with pension rights, ERISA plaintiffs can employ the *McDonnell Douglas* framework to prove their claim. *Id*. And so, a plaintiff bringing an ERISA claim must show that: "(1) the employer performed a prohibited action (2) for the purpose of interfering (3) with the attainment of a right to which the employee is currently, or in the future may become, entitled." *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 453 (D. Md. 2012); *see also Hooker v. Tunnell Gov't Servs., Inc.,* 447 F. Supp. 3d 384, 394 (D. Md. 2020) (wherein the plaintiff alleged that the defendant discharged her to interfere with her right to apply for long-term disability benefits under an ERISA plan).

### IV. ANALYSIS

The Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that: (1) the Plaintiff's claims based upon events that occurred before June 11, 2021, are untimely; (2) the Plaintiff's claims based on his November 2022 termination have not been administratively exhausted; and (3) the Plaintiff fails to state plausible employment

11

discrimination and retaliation claims in the complaint. ECF No. 21-1 at 8-30. And so, the Defendants request that the Court dismiss the complaint. *Id*. at 30.

The Plaintiff does not substantively address most of the Defendants' arguments in his response in opposition. *See generally* ECF No. 25. But the Plaintiff, nonetheless, requests that the Court deny the Defendants' motion to dismiss. *Id*. at 9.

For the reasons that follow, the undisputed evidence before the Court shows that the Plaintiff's claims based upon his March 2021 recruitment, hiring and job classification, and any other events that occurred before June 11, 2021, are untimely. The Plaintiff has also failed to exhaust his employment discrimination and retaliation claims, based upon his November 2022 termination, or other events that occurred after April 7, 2022, before bringing this employment discrimination matter.

A careful reading of the complaint also shows that: (1) the Plaintiff fails to state plausible FMLA interference and retaliation claims in Count I of the complaint; (2) the Plaintiff fails to state a plausible ADA claim in Count II of the complaint; (3) the Plaintiff fails to state plausible Title VII discrimination and retaliation claims in Count III of the complaint; (4) the Plaintiff fails to state a plausible ERISA claim in Count IV of the complaint; and (5) the Plaintiff fails to state a plausible "Persons With Disabilities Civil Rights Act" claim in Count V of the complaint. In addition, the complaint makes clear that the Plaintiff fails to satisfy the pleading requirements set forth in Fed. R. Civ. P. 8(a), with regards to his claims in Counts IV through XVIII of the complaint. And so, the Court (1) GRANTS the Defendants' motion to dismiss; and (2) DISMISSES the complaint.

### A. The Plaintiff's VII, ADA And ADEA Claims Based Upon His March 2021 Recruitment, Hiring And Job Classification Are Untimely

As an initial matter, the Defendants correctly argue that the Plaintiff's employment discrimination claims, based upon his March 2021 recruitment, hiring and job classification, are untimely, because these claims arise from events that occurred more than 180 days before the Plaintiff filed his charge with the EEOC. ECF No. 21-1 at 6-7. Title VII requires that an aggrieved party file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred" or within 300 days "if the aggrieved person presented the claim to a state deferral agency." 42 U.S.C. § 2000e–5(e)(1). And so, an administrative charge that is not filed within 180 days of the alleged discriminatory conduct is untimely. *Hentosh*, 767 F.3d at 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)). This timeliness

requirement also applies to claims brought pursuant to the ADA and ADEA. *See* 42 U.S.C. § 12117 (ADA); 29 U.S.C. § 626(d) (ADEA).

In this case, there is no dispute that the Plaintiff filed his charge of discrimination with the EEOC on April 7, 2022. *See* ECF No. 1-1; ECF No. 21-1 at 6. Given this, the Plaintiff's charge can only cover alleged discriminatory conduct that occurred no more than 180 days beforehand, namely, on or after June 11, 2021. A careful reading of the complaint shows, however, that the Plaintiff relies upon alleged discriminatory conduct that occurred in March 2021, related to his recruitment, hiring and job classification, to support his Title VII, ADA and ADEA claims. *See generally* ECF No. 1. To the extent that the Plaintiff's Title VII, ADA, and ADEA claims are based upon this, or other conduct that occurred before June 11, 2021, they are untimely. And so, the Court must DISMISS these claims.

### B. The Plaintiff's Has Not Exhausted His Discrimination Claims Based Upon His November 2022 Termination

The Court must also dismiss the Plaintiff's discrimination claims based upon his November 2022 termination of employment, because these claims have not been administratively exhausted. Title VII requires that the Plaintiff file a charge of discrimination with the EEOC before filing suit in this Court. 42 U.S.C. § 2000e-5(f)(1); *see also, e.g.*, *Puryear*, 214 F.3d at 518; *Miles*, 429 F.3d at 491. The ADA and ADEA have a similar requirement. 42 U.S.C. § 12117(a) (ADA); 29 U.S.C. § 626(d)(1) (ADEA). As discussed above, the Plaintiff filed a charge of discrimination with the EEOC on April 7, 2022. There is no dispute in this case that the Plaintiff did not later amend this charge, or file another charge of discrimination. ECF No. 21-1 at 7-8; *see generally* ECF Nos. 1 and 25. Given this, the Plaintiff's charge of discrimination does not address his subsequent termination, or other events that occurred after April 7, 2022.

To the extent that the Plaintiff's Title VII, ADA, and ADEA claims are based upon facts and/or events that occurred after April 7, 2022, including his November 2022 termination, these claims have not been administratively exhausted. And so, the Court must also DISMISS these claims.

### C. The Court Must Dismiss The Plaintiff's Claims Against The Individual Defendants

Turning to the merits of the Plaintiff's employment discrimination and retaliation claims, the Court observes as a preliminary matter that the Plaintiff's Title VII, ADA and ADEA claims against the Individual Defendants must be dismissed. *See McNeal*, 307 Fed. App'x at 775 n.6 (argued but unpublished) ("[O]nly an employer, not an individual employee, may be held liable under the ADEA."); *Baird*, 192 F.3d at 472 (finding that neither Title VII nor the ADA provides for actions against individual defendants for violation of its provisions). In the complaint, the Plaintiff asserts claims under Title VII, the ADA and the ADEA against several individuals, namely Doug McMillion, Delmid Villamor and Naila Reid-Armstrong. But it is well-established that the Plaintiff cannot pursue such employment discrimination claims against these Individual Defendants. *See McNeal*, 307 Fed. App'x at 755 n. 6; *Baird*, 192 F. 3d at 472. And so, the Court also DISMSSES the Plaintiff's Title VII, ADA and ADEA claims against the Individual Defendants.

### D. The Plaintiff Fails To State Plausible FMLA Claims

The Defendants also persuasively argue that the Plaintiff fails to state plausible FMLA interference and retaliation claims in this matter, because the Plaintiff fails to allege facts to show that he was eligible for FMLA leave. To prevail on his FMLA interference and retaliation claims, the Plaintiff must first show that he is eligible for leave under that statute. *See Adams*, 789 F.3d at 427. In this regard, Section 2611(2)(A) of the FMLA provides that an employee who is eligible for FMLA leave is someone who has been employed at least 12 months and worked at least 1,250 hours over the past 12 months. 29 U.S.C. § 2611(2)(A).

The Plaintiff alleges in the complaint that he was hired by Walmart on March 12, 2021, he was placed on paid leave for several weeks in 2021 and 2022, and that Walmart terminated his employment on November 26, 2022. ECF No. 1 at Factual Background ¶ 5, 30-31, 33 and 39. Accepting these allegations as true, the Plaintiff has alleged facts to show that he was employed by Walmart for more than 12 months. But the complaint lacks facts to show that he worked more than 1,250 hours while employed by Walmart. *See generally* ECF No. 1. Given this, the Plaintiff has failed to sufficiently allege facts to show that he was eligible for FMLA

14

leave, to state a plausible claim under the FMLA. And so, the Court DISMISSES the Plaintiff's FMLA interference and retaliation claims in Count I of the complaint.[6]

### E. The Plaintiff Fails To State A Plausible ADA Claim

The Plaintiff's ADA claim is also problematic, because he does not allege facts to show that he has a disability under the ADA. To state a claim for disability discrimination under the ADA, the Plaintiff must plead facts to show that: (1) he has a disability, (2) he is a "qualified individual" for the employment in question, and (3) the employer took an adverse employment action against him because of his disability. *Jacobs*, 780 F.3d at 572. In this regard, the ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Rohan*, 375 F.3d at 273 n.9. The statute also provides a non-exhaustive list of major life activities, including "speaking," "concentrating," "thinking," "communicating" and "working." *Id*. § 12102(2)(A).

In the complaint, the Plaintiff alleges that his "Anxiety, Panic, Depression, Stress Attacks, back and foot injuries are mental and physical impairments that substantially limits one or more major life activities." ECF No. 1 at Count II ¶ 64. But the complaint lacks factual allegations to explain how these ailments substantially limit the Plaintiff's major life activities, to satisfy the requirements of the ADA. *See generally* ECF No. 1. The complaint also lacks factual allegations to show that the adverse actions that Walmart allegedly took against the Plaintiff were due to his alleged disability. *See id*. And so, the factual allegations in the complaint, taken as true, are simply insufficient to state a plausible claim under the ADA.

Even if the Plaintiff could allege facts to show that he has a disability as contemplated by the ADA, the complaint also fails to state a plausible reasonable accommodation claim. To state a failure to accommodate claim under the ADA, the Plaintiff must plead sufficient facts to show,

---

[6] Even if the Plaintiff could allege facts to show that he was eligible for FMLA leave, the complaint also makes clear that his FMLA interference and retaliation claims are not plausible. While the Plaintiff alleges that he suffers from "Anxiety, Panic, Depression, Stress Attacks, back and foot injuries," he does not allege that these conditions qualified him for leave under the FMLA. *See generally* ECF No. 1. The complaint also lacks sufficient factual allegations to establish the elements of an FMLA retaliation claim. *See generally* ECF No. 1; *see Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 551 (4th Cir. 2006)) (To prevail on his FMLA retaliation claim, the Plaintiff must show that: "(1) [he] engaged in protected activity; (2) the employer took adverse action against [him] and (3) the adverse action was causally connected to [his] protected activity.").

among other things, that a reasonable accommodation would permit him to perform the essential functions of the position and Walmart refused to make the accommodation. *Perdue*, 999 F.3d at 959. But there are no factual allegations in the complaint to show Walmart refused to make a reasonable accommodation.

While the Plaintiff alleges in the complaint that: (1) Walmart offered to discuss a "Reasonable Accommodation" and withdrew his "'Reasonable Accommodation' relating to his schedule" and (2) that he was not permitted "a reasonable accommodation to take 'unpaid medical leave,'" he does not state whether he requested a reassignment as a reasonable accommodation for his disability. ECF No. 1 at Factual Background ¶¶ 24 and 28 and Count II ¶ 69. Given this, the Plaintiff has not alleged facts that, taken as true, state a plausible reasonable accommodation claim. And so, the Court also DISMISSES the Plaintiff's reasonable accommodation claim. Fed. R. Civ. P. 12(b)(6).

The Plaintiff's ADA retaliation claim similarly fails, because the complaint lacks factual allegations to show that his alleged protected activity was connected to Walmart's adverse action. To state a retaliation claim under the ADA, the Plaintiff must allege that: "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds*, 701 F.3d at 154. Here, the Plaintiff alleges that his November 2022 termination was retaliatory under the ADA. ECF No. 1 at Count II ¶ 69. But the Plaintiff does not allege facts to show a causal link between his protected activity and his termination. *See generally* ECF No. 1. And so, the Court also DISMISSES the Plaintiff's ADA retaliation claim for this reason. Fed. R. Civ. P. 12(b)(6).

**F. The Plaintiff Fails To State Plausible Title VII, ERISA And Civil Rights Claims**

The Plaintiff's remaining Title VII and ERISA claims are also not plausible. To state a discrimination claim under Title VII, the Plaintiff must allege facts to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. In this case, the Plaintiff alleges that the Defendants were "predisposed" to discriminate against him based on sex/gender and race. ECF No. 1 at Count III ¶ 79. But the complaint lacks factual allegations to show that the Plaintiff's termination was due to his race, gender, or other protected characteristic. *See generally* ECF No. 1. Given this, the factual allegations in the complaint are not sufficient to draw an inference that the Plaintiff's termination

16

was due to unlawful discrimination. And so, the Court DISMISSES the Plaintiff's Title VII discrimination claim in Count III of the complaint.[7] Fed. R. Civ. P. 12(b)(6).

The Plaintiff's ERISA claim in Count IV of the complaint is also implausible. To state a viable claim under ERISA, the Plaintiff must allege facts to show a specific intent of the employer to interfere with his pension rights. *Conkwright*, 933 F.2d at 239. To show such specific intent, the Plaintiff must demonstrate that: "(1) the employer performed a prohibited action (2) for the purpose of interfering (3) with the attainment of a right to which the employee is currently, or in the future may become, entitled." *Goode*, 874 F. Supp. 2d at 453; *see also Hooker,* 447 F. Supp. 3d at 394.

Here, the Plaintiff alleges that he was "wrongfully terminated, on two separate occasions," for the purpose of interfering with his rights under Walmart's employee benefit plan. ECF No. 1 at Count IV ¶ 88. But there are no factual allegations in the complaint to show that the Plaintiff was entitled to a right under ERISA. *See generally* ECF No. 1. And so, the Plaintiff has not stated a plausible ERISA claim and the Court must DISMISS this claim. Fed. R. Civ. P. 12(b)(6).

Lastly, the Plaintiff's "Persons With Disabilities Civil Rights Act" claim in Count V of the complaint is not plausible, because there is no such legal claim under Maryland or federal law. And so, the Court must also DISMISS this claim. Fed. R. Civ. P. 12(b)(6); *see Lloyd*, 397 Md. at 121 (holding that a court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) when the claim lacks a cognizable legal theory).

### G. The Plaintiff's Remaining Claims Fail To Satisfy Rule 8(a)

As a final matter, the Defendants argue with persuasion that the Court should dismiss the remaining claims in the complaint, set forth in Counts VI to XVIII, because these claims do not satisfy the pleading requirements under Rule 8(a). Pursuant to Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that Rule 8(a) "requires a 'showing' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Given this, a complaint must

---

[7] The Plaintiff similarly fails to state a plausible hostile work environment claim, because the complaint lacks facts to show unwelcome conduct based on his race, gender, or other protected characteristic. *See generally* ECF No. 1.

17

provide "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. And so, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Primerose Shipping Co*., 708 F.3d at 543 (citing *Iqbal,* 556 U.S. at 679).

In this case, a careful reading of Counts VI to XVIII of the complaint makes clear that the Plaintiff does little more than simply recite numerous statutes to support these claims. ECF No. 1 at Count VI-Count XVIII. Notably, there are no specific factual allegations in the complaint to explain how the Defendants allegedly violated these laws, or to show why the Plaintiff believes he is entitled to relief. *Id*. The Court is, of course, mindful of the Plaintiff's *pro se* status in this matter. But the fact that the Plaintiff is proceeding without the assistance of counsel does not relieve him of the obligation to provide a short and plain statement of his claims, showing that he is entitled to relief, in the complaint. *See Wilson*, 699 F.3d at 797; *see also Bell*, 2013 WL 6528966, at *1. Because the Plaintiff has not done so here with regards to Counts VI through XVIII, the Court also DISMISSES these claims. Fed. R. Civ. P. 8(a) and 12(b)(6); *see also Twombly*, 550 U.S. at 556 n.3.[8]

## V.    CONCLUSION

In sum, the Plaintiff's claims based upon his March 2021 recruitment, hiring and job classification are untimely and the Plaintiff has failed to exhaust his employment discrimination and retaliation claims based upon his November 2022 termination. A careful reading of the complaint also shows that the Plaintiff fails to state plausible employment discrimination and retaliation claims in this case.

---

[8] Because the Court determines that these claims do not satisfy Rule 8(a), the Court does not reach the other arguments raised by the Defendants regarding these claims.

And so, the Court:

(1) **GRANTS** the Defendants' motion to dismiss; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

                                                s/Lydia Kay Griggsby
                                                LYDIA KAY GRIGGSBY
                                                United States District Judge